IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
**Asheville Division**

FILED
ASHEVILLE, N.C.

JUN 23 2009

U.S. DISTRICT COURT
W. DIST. OF N.C.

| | | |
|---|---|---|
| IMRAN ALAM, | ) | |
|     Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:09cv114 |
| | ) | (1:07cr119) |
| UNITED STATES OF AMERICA, | ) | |
|     Respondent. | ) | |
| | ) | |

## MEMORANDUM OPINION

Petitioner is a Pakistani citizen with permanent legal resident status who pled guilty to, and

was sentenced for, operating an illegal gambling business, in violation of 18 U.S.C. § 1955. He now

seeks to have his conviction and sentence vacated pursuant to 28 U.S.C. § 2255[1] on the ground that

he received constitutionally ineffective assistance of counsel in connection with both the decision

to plead guilty to the charge and the decision not to seek to withdraw the plea prior to sentencing.

As it happens, the government agrees.

For the reasons that follow, it is clear, as the parties agree, that petitioner received

constitutionally ineffective assistance of counsel, absent which there is a reasonable probability that

petitioner would not have pled guilty. Accordingly, the petition must be granted and petitioner's

conviction and sentence must be vacated.

---

[1] Although petitioner has completed his term of incarceration on the underlying
conviction, jurisdiction is appropriate pursuant to § 2255 because petitioner's still-pending term
of supervised release constitutes "custody" sufficient to bring petitioner's motion within § 2255's
jurisdictional ambit. *See United States v. Pregent*, 190 F.3d 279, 283 (4th Cir. 1999) ("A prisoner
on supervised release is considered to be 'in custody' for purposes of a § 2255 motion." (citing
*Maleng v. Cook*, 490 U.S. 488, 491 (1989))). Thus, it is unnecessary to reach or decide
petitioner's argument that jurisdiction is also appropriate pursuant to 28 U.S.C. § 1651(a) to issue
a writ of *coram nobis*.

# I.

Petitioner Imran Alam is one of forty-one defendants charged in a series of public corruption cases involving approximately five indictments and nine criminal informations. A total of thirty-five defendants, including petitioner, pled guilty to various charges. In addition, following a three-week jury trial in which petitioner testified, two defendants—including former Buncombe County, North Carolina, Sheriff Bobby Medford—were found guilty of all ten counts charged against them, which included honest services wire fraud, obstruction of state and local law enforcement, and conspiracies to commit extortion, wire fraud, money laundering, and operation of an illegal gambling business. The charges against three other defendants were dismissed, and one defendant is now deceased. All of the thirty-seven defendants who either pled guilty or were found guilty have been sentenced, and many of those defendants, including petitioner, received sentence reductions pursuant to Rule 35(b), Fed. R. Crim. P., for providing substantial assistance to the government. Only those facts pertinent to the petition are set forth here.[2]

On July 31, 2007, as part of the ongoing public corruption investigation, petitioner was arrested pursuant to a sealed complaint charging him with conspiracy to operate an illegal gambling business in violation of § 1955. Two days later, a Western District of North Carolina grand jury returned an indictment against approximately twenty-two individuals, including petitioner, charging petitioner with (i) conspiracy to violate § 1955; (ii) a substantive § 1955 violation; and (iii) conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(a) and 1957. The record

---

[2] The facts recited here are derived from (i) the records in the two criminal cases against petitioner (Nos. 1:07cr69 and 1:07cr119), which records include affidavits submitted by petitioner and his former counsel (No. 1:07cr119, Docket No. 57, Exs. 1–4); and (ii) the trial record in the case against former Sheriff Medford (No. 1:07cr122).

reflects that Mr. Jack W. Stewart (hereinafter referred to as "Counsel"), who has been licensed to practice in federal court since approximately 1981, served as petitioner's counsel of record from petitioner's August 1, 2007, initial appearance until May 2008.[3]

Petitioner, a Pakistani citizen and permanent legal U.S. resident,[4] was concerned from the outset about the effect of a criminal conviction on his immigration status. Indeed, the record reflects that he asked Counsel repeatedly about this issue. Thus, in or about November 2007, after the government proposed that petitioner accept a plea agreement to plead guilty to operating an illegal gambling business, in violation of § 1955, Counsel contacted more than one immigration lawyer[5] to inquire whether a § 1955 conviction would lead to petitioner's removal from the United States. None of those immigration attorneys were formally retained or paid by petitioner. According to Counsel, the immigration lawyers he contacted advised that because a § 1955 conviction is not an "aggravated felony" (as defined by 8 U.S.C. § 1101(a)(43)), petitioner would not be removed.

---

[3] Since Counsel's withdrawal, petitioner has been represented by Mr. Anthony G. Scheer, who appeared for petitioner at an October 2008 Rule 35 hearing and serves as counsel of record for the instant petition. The record also reflects that Mr. Edward Louis Bleynat, Jr., has represented petitioner with respect to certain forfeiture issues. The constitutional effectiveness of Mr. Scheer's and Mr. Bleynat's assistance is not at issue here.

[4] In addition, the record reflects (i) that petitioner's three children are native-born U.S. citizens; (ii) that his wife, a Pakistani citizen, is a permanent legal resident; (iii) that petitioner has lived in the United States for more than twenty-five years; (iv) that petitioner built a successful business in the United States distinct from any illegal gambling; and (v) that petitioner has few ties to his native country.

[5] Counsel's affidavit indicates that he contacted "several" immigration attorneys, and petitioner's affidavit indicates that Counsel represented that two or three immigration attorneys were contacted. See Alam Aff. (No. 1:07cr119, Docket No. 57, Ex. 1), at ¶ 8; Stewart Aff. (No. 1:07cr119, Docket No. 57, Ex. 3), at ¶ 4. The precise number of immigration attorneys contacted by Counsel is immaterial, however, as Counsel represents that all immigration attorneys he contacted said that § 1955 is not an "aggravated felony," and petitioner agrees that Counsel relayed that unanimous opinion to petitioner prior to petitioner's plea.

Although Counsel represented at a May 2009 teleconference hearing in this matter that he also personally researched the issue, he indicated (i) that he relied primarily upon the advice of the immigration attorneys and (ii) that his research did not reveal any authority to the contrary. Both petitioner and Counsel agree that in late November 2007, shortly before petitioner's plea, Counsel advised petitioner (i) that a § 1955 conviction was not an "aggravated felony" and (ii) that acceptance of the government's proposed plea agreement would thus not result in petitioner's removal or deportation. On receiving this advice, petitioner decided to accept the plea agreement, a decision petitioner avers he would not have made but for Counsel's assurance that petitioner would not be removed or deported. Shortly thereafter, on December 7, 2007, petitioner appeared before United States Magistrate Judge Dennis L. Howell and pled guilty to a one-count criminal information charging him with a § 1955 violation.[6] The record reflects that immigration consequences were not addressed during the course of the December 7, 2007, proceeding by Magistrate Judge Howell, the government, or Counsel.

Thereafter, in early April 2008, a few weeks prior to petitioner's scheduled sentencing hearing, Counsel received a letter from one of the immigration attorneys he had previously contacted alerting him (i) that a § 1955 conviction was, in fact, an "aggravated felony" that would trigger petitioner's immediate removal upon conviction; and (ii) that Counsel should move for an immediate withdrawal of petitioner's plea. Following receipt of this letter, Counsel met with petitioner and advised petitioner that the previous advice Counsel had given petitioner was wrong; a § 1955 conviction is an "aggravated felony" under § 1101(a)(43)(J) that would result in petitioner's removal

---

[6] In accordance with the plea agreement, the three additional charges in the indictment against petitioner were subsequently dismissed on the government's motion. *See United States v. Alam*, No. 1:07cr69 (W.D.N.C. May 29, 2008) (Order) (Docket No. 427).

from the United States. Moreover, Counsel also advised petitioner *not* to withdraw his plea prior to, or at his sentencing hearing. According to Counsel, this advice was the result of his "strategic decision" that seeking to withdraw the plea might well have impacted petitioner's usefulness to the government at former Sheriff Medford's trial, which was set to begin on or about the same date as petitioner's sentencing. Stewart Supplemental Aff. (No. 1:07cr119, Docket No. 57, Ex. 4), at ¶ 4. Counsel's affidavit further avers that "[h]aving made this decision and believing that there was no real alternative, [he] did not offer a choice or set forth any alternatives to [petitioner]." *Id.* at ¶ 6. Rather, the record reflects that Counsel advised petitioner that because the government attorneys prosecuting petitioner had no interest in seeking to remove him,[7] Counsel could take up petitioner's immigration problem after petitioner's sentencing and the completion of petitioner's cooperation, including his testimony at former Sheriff Medford's trial.

On April 30, 2008, petitioner was sentenced to twenty-one months imprisonment, to be followed by three years of supervised release. Forfeiture was also ordered as a part of the sentence,[8] and in this regard petitioner consented to forfeiture of three pieces of real property and approximately $1.6 million in cash or substitute assets. Although Counsel referred to petitioner's immigration status at sentencing and said it was "greatly in jeopardy," no effort was made to withdraw petitioner's plea. Sentencing Tr. (No. 1:07cr119, Docket No. 45), at 18.

Following sentencing, petitioner was permitted to remain on pretrial release pending a

---

[7] The government does not contest Counsel's averment that the government attorneys prosecuting petitioner made clear that they did not seek petitioner's removal. Importantly, however, the government did not promise as part of the plea agreement that petitioner would not be removed or deported.

[8] Section 1955(d) provides, in pertinent part, that "[a]ny property, including money, used in violation of the provisions of this section may be seized and forfeited to the United States."

reporting date from the Bureau of Prisons, in part because of his ongoing cooperation with respect to the broader public corruption investigation. Petitioner subsequently appeared as a government witness at former Sheriff Medford's trial, admitting that he operated an illegal gambling business and testifying further that he had met with Medford and paid the then-sheriff bribes to avoid law enforcement interference with petitioner's illegal gambling operation. After receiving two extensions of his reporting date, petitioner reported for his term of incarceration on September 18, 2008.

Approximately three weeks later, on October 8, 2008, the government's motion to reduce sentence pursuant to Rule 35(b), Fed. R. Crim. P., was granted, and petitioner's term of imprisonment was reduced to time served (approximately twenty-five days) with a special condition of supervised release that petitioner serve five months of community confinement. In the course of the Rule 35 hearing, an inquiry was conducted with respect to petitioner's immigration status, as any potential Immigration and Customs Enforcement (ICE) detainer would have affected the practicability of the community confinement special condition. Mr. Anthony G. Scheer, who began representing petitioner in May 2008, responded that although petitioner was a permanent legal resident and no ICE detainer had been filed, Mr. Scheer believed that "there will be a detainer placed on [petitioner] probably in the next week or ten days, at the very outside." Rule 35 Hearing Tr. (No. 1:07cr119, Docket No. 52), at 5. Yet, Mr. Scheer also represented that "it is not a foregone conclusion that the detainer will be placed on him[.]" *Id.* at 7. Accordingly, at petitioner's request, the reduced sentence was imposed on the assumption that no detainer would be filed, but with leave for petitioner to seek elimination of the community confinement condition in the event petitioner was

incarcerated on an ICE detainer.[9] The next day, an ICE detainer was filed,[10] and petitioner has since remained in ICE custody awaiting deportation proceedings.[11]

On March 18, 2009, petitioner filed the instant motion pursuant to § 2255, alleging (i) that Counsel's advice with respect to the immigration consequences of a § 1955 conviction constituted ineffective assistance of counsel, and (ii) that petitioner would not have pled guilty (and in any event would have withdrawn the plea) absent Counsel's erroneous assurances that petitioner would not be removed or deported. The government responded, agreeing that petitioner's conviction and sentence must be vacated for ineffective assistance of counsel. Thereafter, the government and petitioner, by counsel, appeared at a teleconference hearing on May 22, 2009,[12] and the government was directed to provide a supplemental brief. The government complied, and the matter is now ripe for disposition. Further oral argument is dispensed with, as the facts and legal contentions are adequately set forth in the existing record and additional oral argument would not aid the decisional process.

## II.

It is well-settled that a two-pronged test applies to claims that a guilty plea was induced by ineffective assistance of counsel. *See Hill v. Lockhart*, 474 U.S. 52 (1985), *cited in United States v.*

---

[9] Although an ICE detainer was ultimately filed, petitioner has not moved to eliminate the special condition of community confinement.

[10] In addition, petitioner contends that although the private prison at which he was serving his sentence received an Order directing it to release him on October 8, 2008, the facility held petitioner at ICE's request until ICE could serve a detainer the following day.

[11] The record reflects that a hearing in those proceedings is currently scheduled for Tuesday, June 30, 2009.

[12] In addition to Mr. Scheer, petitioner's current counsel of record, Counsel also appeared on his own behalf at the May 22, 2009, hearing.

*Bowman*, 348 F.3d 408, 416 (4th Cir. 2003). First, to prevail on a such a claim, a petitioner must show that counsel's performance "'fell below an objective standard of reasonableness.'" *Hill*, 474 U.S. at 57 (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). And where, as here, "the client asks for advice about a 'collateral consequence' and relies upon it in deciding whether to plead guilty, the attorney must not grossly misinform his client about the law." *Ostrander v. Green*, 46 F.3d 347, 355 (4th Cir. 1995) (citing *Strader v. Garrison*, 611 F.2d 61 (4th Cir. 1979)), *overruled on other grounds by O'Dell v. Netherland*, 95 F.3d 1214, 1222–23 (4th Cir. 1996).[13] In this respect, although reviewing courts "cannot expect criminal defense lawyers to be seers," the Fourth Circuit "demand[s] that [defense attorneys] at least apprise themselves of the applicable law and provide their clients with a reasonably accurate description of it." *Ostrander*, 46 F.3d at 355. Assuming a petitioner demonstrates that counsel's performance failed to meet this standard, a petitioner must next show "prejudice"—in other words, a petitioner must establish "that there is a reasonable probability that, but for counsel's errors, he would not have [pled] guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. In this regard, "a 'reasonable probability' is 'a probability sufficient to undermine confidence in the outcome.'" *Ostrander*, 46 F.3d at 355 (quoting *Strickland*, 466 U.S. at 694).

These principles, applied here, compel the conclusion that Counsel's assistance was constitutionally ineffective and that petitioner's motion to vacate his conviction and sentence must

---

[13] *See also United States v. Gajendragadkar*, 149 F.3d 1171, 1998 WL 352866, at *2 (4th Cir. June 3, 1998) (Table) (unpublished) (*per curiam*) (applying *Ostrander* and *Strader* to § 2255 ineffective assistance petition based on gross misinformation by counsel regarding conviction's collateral deportation consequences); *United States v. Smith*, 113 F. Supp. 2d 879, 908 (E.D. Va. 1999) (observing that *Strader* provides appropriate standard for ineffective assistance claims based on gross misinformation regarding indirect consequences of plea); *Koper v. Angelone*, 961 F. Supp. 916, 920 (W.D. Va. 1997) (same).

be granted. First, Counsel's advice regarding the immigration consequences of petitioner's plea was undeniably grossly inaccurate, given that the governing statute—§ 1101(a)(43)(J)—explicitly enumerates a § 1955 conviction as an "aggravated felony" requiring removal.[14] Accordingly, Counsel's advice that a § 1955 violation is not an "aggravated felony" requiring petitioner's removal clearly fell below an objective standard of reasonableness; indeed, the plain language of the applicable immigration statutes compels the conclusion that Counsel grossly misinformed petitioner on this subject.[15]

Nor was this the only incident of Counsel's ineffective assistance. Once Counsel discovered, prior to petitioner's sentencing, that he had incorrectly advised petitioner as to the immigration

---

[14] More specifically, § 1101(a)(43) defines the term "aggravated felony," and § 1101(a)(43)(J) explicitly provides that the term "aggravated felony" includes "an offense described in . . . [18 U.S.C. §] 1955 . . . (relating to gambling offenses), for which a sentence of one year imprisonment or more may be imposed." In turn, 8 U.S.C. § 1227(a)(2)(A)(iii) provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable," and 8 U.S.C. § 1228(c) provides that "[a]n alien convicted of an aggravated felony *shall* be conclusively presumed to be deportable from the United States" (emphasis added).

[15] It is worth noting that in the Fourth Circuit, "an attorney's failure to advise a client that deportation *may* result from a conviction does not constitute ineffective assistance of counsel." *United States v. Yearwood*, 863 F.2d 6, 7–8 (4th Cir. 1988) (citing *United States v. Santelises*, 509 F.2d 703, 704 (2d Cir. 1975)) (emphasis added). It is unclear, however, whether this result would obtain in this case, where immigration consequences were not merely *possible*, but nearly *certain. See United States v. Couto*, 311 F.3d 179, 187–90 (2d Cir. 2002) (observing in *dicta* that 1996 congressional amendments, by rendering "deportation . . . an essentially certain, automatic, and unavoidable consequence of an alien's conviction for an aggravated felony[,]" may have called into question cases, like *Santelises*, that have held attorneys and courts need not advise aliens convicted of aggravated felonies that they will be removed or deported). Yet, there is no doubt that where, as here, a defendant inquires whether he will be removed upon conviction for a particular offense, and counsel provides advice in response, counsel must not grossly misinform the defendant. *See Ostrander*, 46 F.3d at 355; *Gajendragadkar*, 1998 WL 352866, at *2 (applying *Ostrander* standard to gross misinformation regarding immigration consequences of conviction). Accordingly, it is unnecessary to address petitioner's alternative argument that Counsel was required (even absent petitioner's inquiry) to advise petitioner of the automatic removal that would result from a § 1955 conviction.

consequences of petitioner's plea, Counsel, rather than advising petitioner that petitioner could seek to withdraw his plea,[16] then grossly misinformed petitioner by advising him that Counsel could somehow halt petitioner's removal, ostensibly by convincing the government to do so because of petitioner's cooperation. This advice was also grossly inaccurate, as the government has no such discretion with respect to aliens convicted of "aggravated felonies."[17] In sum, the record demonstrates that Counsel, in at least two respects, rendered constitutionally ineffective assistance regarding the immigration consequences of petitioner's guilty plea. Accordingly, petitioner has

---

[16] *See* Rule 11(d)(2)(B), Fed. R. Crim. P. (providing that a defendant may withdraw a guilty plea prior to imposition of sentence upon "show[ing] a fair and just reason for requesting the withdrawal"); *United States v. Faris*, 388 F.3d 452, 459 (4th Cir. 2004) ("In general, a defendant seeking to establish that he is entitled to withdraw his plea because he did not receive close assistance of counsel must demonstrate that counsel performed deficiently and that, but for counsel's errors, the defendant would not have pled guilty and would instead have insisted on proceeding to trial." (citing *Bowman*, 348 F.3d at 416)).

[17] To the contrary, the statutory provision providing for Attorney General discretion to cancel the removal of otherwise deportable aliens in certain circumstances specifically excludes permanent legal residents convicted of aggravated felonies. *See* 8 U.S.C. § 1229b(a)(3); *Mbea v. Gonzales*, 482 F.3d 276, 280–81 (4th Cir. 2007) (observing congressional repeal of prior waiver provision for permanent legal residents convicted of aggravated felonies); *see also Lopez v. Gonzales*, 549 U.S. 47, 50–51 (2006) ("Under the immigration statutes . . . the Attorney General's discretion to cancel the removal of a person otherwise deportable does not reach a convict of an aggravated felony[,] . . . [n]or is an aggravated felon eligible for asylum." (citing 8 U.S.C. §§ 1229b(a)(3), 1158(b)(2)(A)(ii), and 1158(b)(2)(B)(i)). In addition, 8 U.S.C. § 1228 provides for expedited removal of aliens convicted of aggravated felonies, and any alien subject to such expedited removal may not seek any discretionary waiver from the Attorney General. *See* § 1228(b)(5) ("No alien described in this section shall be eligible for any relief from removal that the Attorney General may grant in the Attorney General's discretion."); *see also United States v. Arrieta*, 224 F.3d 1076, 1080–81 (9th Cir. 2000). Moreover, 8 U.S.C. § 1182(h), which provides for a discretionary Attorney General waiver of the bar against admission of aliens where the bar would pose an extreme hardship on certain citizen and legal resident relatives, excludes permanent legal residents, like petitioner, convicted of aggravated felonies. *See Arrieta*, 224 F.3d at 1080. Finally, the parties have not identified, nor has a search revealed, any means (short of presidential pardon) by which a permanent legal resident convicted of an aggravated felony could avoid automatic removal.

clearly satisfied the first prong of the *Hill* ineffective assistance test.

Next, petitioner has also demonstrated that he suffered prejudice as a result of Counsel's errors. More specifically, petitioner's affidavit avers—credibly—that he would not have pled guilty absent Counsel's assurances that a § 1955 conviction would not lead to petitioner's removal. Nor is there any reason to doubt this averment, as the record reflects (i) that petitioner has resided in the United States for more than twenty-five years; (ii) that petitioner's wife is a permanent legal resident; (iii) that petitioner's children are native-born U.S. citizens; and (iv) that petitioner has built a successful business in the United States distinct from any illegal gambling. These circumstances make it clear that petitioner would not want to return to Pakistan, a currently unstable country with which he apparently has few ties. And it follows *a fortiori* that if petitioner would not have pled absent Counsel's erroneous pre-plea advice, petitioner similarly would have sought to withdraw his plea in the absence of Counsel's erroneous assurances that Counsel could convince the government to halt removal after sentencing.[18] Thus, petitioner has demonstrated a reasonable probability that, but for Counsel's constitutionally ineffective assistance, he would not have pled guilty and would have insisted on going to trial. Accordingly, the petition must be granted and petitioner's conviction

---

[18] To be sure, it is clear that "[t]he potential strength of the [government]'s case must inform [the prejudice] analysis, inasmuch as a reasonable defendant would surely take it into account." *Ostrander*, 46 F.3d at 356 (citing *Hill*, 474 U.S. at 59–60). Yet, this record does not reflect any evidence with respect to the relative strength of the government's case against petitioner, nor has the government argued that any such strength precludes a finding of prejudice. Thus, because Counsel's strikingly ineffective assistance undermines confidence in petitioner's plea, petitioner's motion must be granted. *See id.* (observing in the context of erroneous advice regarding eligibility for work release that "[a] reasonable defendant sitting in jail and facing a difficult decision . . . could certainly be swayed by . . . [a] confident, though grossly misinformed, prediction that he would probably be breathing free air within days").

and sentence vacated.[19]

An appropriate Order will issue.

June 23, 2009                                                  _____
Alexandria, VA                                               T. S. Ellis, III
                                                                    United States District Judge

---

[19] It is worth noting that the result reached here is consistent with the results reached by the Second and Ninth Circuits in analogous circumstances. *See Couto*, 311 F.3d at 187 (reversing district court denial of motion to withdraw guilty plea for ineffective assistance where defense counsel "affirmatively misled [d]efendant into believing there were things that could be done to avoid deportation (when in fact there were none)" following conviction of an aggravated felony); *United States v. Kwan*, 407 F.3d 1005, 1015 (9th Cir. 2005) (granting writ of *coram nobis* where defense counsel "effectively misled[] his client about the immigration consequences of a conviction"). Moreover, in 1998 a Fourth Circuit panel affirmed a district court grant of § 2255 relief where, as here, a petitioner "repeatedly questioned his attorney about the risk of deportation, and . . . in response to those inquiries counsel erroneously assured [petitioner] that he would not be subject to deportation now or in the future." *Gajendragadkar*, 1998 WL 352866, at *2. In addition, at least two unpublished decisions in district courts within this circuit have reached similar results. *See Atkinson v. United States*, No. 1:06cv19, 2009 WL 900067, at *4–5 (N.D. W.Va. Mar. 31, 2009) (citing *Gajendragadkar*, 1998 WL 352866, at *2; *Kwan*, 407 F.3d at 1015; *Couto*, 311 F.3d at 188); *Chernez-Viteri v. United States*, No. 1:08cv211-1-T, 2008 WL 2945443, at *2 (W.D.N.C. July 25, 2008) (citing *Ostrander*, 46 F.3d at 354; *Strader*, 611 F.2d at 65). *But see Mohamud v. United States*, No. 5:03cv227, 2006 WL 1867298, at *6 (N.D. W.Va. June 30, 2006) (distinguishing *Gajendragadkar* where defendant was aware of possible deportation consequences at sentencing and failed to withdraw guilty plea despite being advised by the district court at sentencing that he may be deported).